J. Raymond CLARK and Anne Lewis Clark, Appellants,

v.

Danielle J. CLARK, Appellee.

No. 92–CV–119.

District of Columbia Court of Appeals.

Submitted Dec. 14, 1993.

Decided July 18, 1994.

J. Raymond Clark, Saint Simons Island, GA, was on the brief for appellants.

Brian D. West and Irve Charles LeMoyne, Jr., Vienna, VA, were on the brief for appellee.

Before TERRY and SULLIVAN, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

This appeal is the latest chapter in the protracted litigation associated with a separation and divorce.[1] The issue before us is whether, under District of Columbia law, a husband can validly execute a quitclaim deed to his wife for a property that the two hold as tenants by the entireties, thereby extinguishing his own interest in the property. The trial court, on a motion for partial summary judgment, ruled against the husband, and a jury later found that he had "intended to relinquish permanently" his entire interest in the property when he gave his wife the quitclaim deed. He appeals; we affirm.

I

In March 1976 Raymond and Danielle Clark separated, but did not divorce. A few months after they separated, they bought a house in the Georgetown area for Mrs. Clark and their daughter to live in. Mr. Clark decided that he and Mrs. Clark should take

1. *See Clark v. Clark,* 535 A.2d 872 (D.C.1987).

title as tenants by the entireties, and that is what they did.[2]

Two years later, while the parties were still separated but not yet divorced, Mr. Clark prepared, executed, and delivered to Mrs. Clark a quitclaim deed which said that he was conveying to Mrs. Clark "all of [his] right, title, and interest" in the house they had purchased.[3] Mrs. Clark did not record the quitclaim deed, however, because her estranged husband—who, Mrs. Clark believed, was also her attorney[4]—told her not to.[5]

The parties were finally·divorced in 1979. Mr. Clark later remarried, and in 1988 he conveyed his interest in the Georgetown house as a gift to his new wife, Anne Lewis Clark, and recorded the deed of gift. Danielle Clark, his former wife, was not told of this supposed gift and did not discover it until she tried to sell the house in 1989. She thereupon filed this suit in the Superior Court seeking to invalidate Mr. Clark's gift to his second wife and asking that the Recorder of Deeds be ordered to record the 1978 quitclaim deed.[6] Mr. Clark and his second wife (appellants) moved for partial summary judgment, arguing that the quitclaim deed had no effect on the tenancy by the entireties, but the court denied the motion. The case then went to trial before a jury on the issue of Mr. Clark's intent in executing the deed. The jury returned a verdict against him, finding that Mr. Clark "intended to relinquish permanently all his right, title, and interest in the house to [his first wife] when he gave her a quitclaim deed

to the property." The court entered judgment on the verdict and later denied appellants' motion for judgment notwithstanding the verdict or, alternatively, for a new trial.

## II

The doctrine of tenancy by the entireties has long been established in the law of the District of Columbia. *See Travis v. Benson,* 360 A.2d 506, 509 (D.C.1976); *Settle v. Settle,* 56 App.D.C. 50, 51, 8 F.2d 911, 912 (1925). It rests on the common law concept of husband and wife as a single, indivisible unit. As one treatise explains:

> Because the husband and wife were considered one person, a true form of concurrent ownership between them was not conceptually possible; the tenancy by the entirety, in which the property was held in its entirety—without undivided shares—by the marital unit of husband and wife, was the only tenancy by which husband and wife could concurrently hold land.

4A Richard R. Powell, The Law of Real Property ¶ 620[3] (1991) (hereafter Powell).

The issue in this appeal is whether the quitclaim deed, which Mr. Clark executed while he and his former wife were still married and holding the property as tenants by the entireties, extinguished any interest that he had in the property. When appellants moved for judgment n.o.v., arguing that the quitclaim deed was invalid as a matter of law, the trial court denied the motion, citing 4A Powell, *supra,* at ¶ 622[3],[7] and *Hogan v.*

---

**2.** Mrs. Clark testified at trial, however, that from the beginning the house was hers alone.

**3.** Mr. Clark testified that he did this only because he wanted to end his wife's badgering. He also said that he executed the quitclaim deed because he intended to give Mrs. Clark the house as a gift once she repaid him the money he had put into it, but that he withdrew the "gift" because he was never fully repaid. Mrs. Clark claimed that the house always had been hers, and that she and Mr. Clark "want[ed] to legalize that very fact" by executing the quitclaim deed.

**4.** Mr. Clark is a member of the District of Columbia bar.

**5.** Mrs. Clark testified that Mr. Clark told her not to record the deed because there was a provision in the deed of trust stating that any change of

ownership would give the lender a right to call the loan, which she would have been unable to pay.

**6.** Mrs. Clark also sought compensatory and punitive damages. Mr. Clark and his second wife filed an answer, accompanied by a counterclaim for partition and sale of the property, and for other relief. No issues relating to Mrs. Clark's damage claim or the counterclaim are before us in this appeal.

**7.** Paragraph 622[3] states, in pertinent part:

> *Rights of Possession and Conveyance.* Each tenant by the entirety is entitled to possess the entire property ... and to be protected against waste by the other spouse. One spouse's interest as a tenant by the entirety may be trans-

*Hogan,* 102 U.S.App.D.C. 87, 250 F.2d 412 (1957).[8] Appellants maintain that the trial court's ruling must be reversed because it offends centuries of common law. We disagree.

Appellants argue that a tenancy by the entireties essentially locks a husband and wife into joint ownership. They assert that "[a]n individual tenant by the entireties [can] convey nothing to anyone acting alone because separately he owns nothing" and that "so long as [Mr. and Mrs. Clark] were still husband and wife, the common law prohibition against unilateral alienation and the right of survivorship remained intact." They conclude that the quitclaim deed from Mr. Clark to Mrs. Clark violated these principles and was therefore a nullity.

To support this argument, appellants rely heavily on *Coleman v. Jackson,* 109 U.S.App. D.C. 242, 286 F.2d 98 (1960), *cert. denied,* 366 U.S. 933, 81 S.Ct. 1656, 6 L.Ed.2d 391 (1961). *Coleman* involved a dispute over property rights between Susie Jackson, the legal wife of Thomas Jackson, the decedent, and Alice Coleman, the woman with whom the decedent had lived, ostensibly as husband and wife, for over thirty years. The dispute concerned a house in the District of Columbia which Mr. Jackson and Ms. Coleman bought as tenants by the entireties a few years before Mr. Jackson's death. The trial court ruled that Mr. Jackson and Ms. Coleman could not have owned the property as tenants by the entireties because they were not married and that the conveyance to them created only a tenancy in common, without right of survivorship. The Court of Appeals agreed that they could not have been tenants by the entireties, but it reversed the trial court judgment in favor of Mrs. Jackson, holding that Mr. Jackson and Ms. Coleman had held the house as joint tenants. *Id.* at 246–247, 286 F.2d at 102–103.

Appellants rely on the following language in *Coleman:*

> [T]he two great attributes of tenancy by the entireties [are] the right of survivorship and the inability of either spouse acting alone to alienate an interest in the property during the joint lives of the two. The right of the survivor to take all is an attribute of joint tenancy as well, but only in tenancy by the entireties is it impossible for one cotenant to sell or pledge his interest or to compel a partition of the property. Tenancy by the entireties exists today under the law of the District [of Columbia].

*Id.* at 243, 286 F.2d at 99 (citation omitted). Appellants maintain that this passage lacks "even a hint of a spousal exception to the prohibition against individual alienation...." We conclude that appellants have misread *Coleman* and created a straw man in the so-called "spousal exception."

To be sure, *Coleman* mentions "the inability of either spouse *acting alone* to alienate an interest in the property during the joint lives of the two." *Id.* (emphasis added); *see Travis v. Benson, supra,* 360 A.2d at 509;[9] *American Wholesale Corp. v. Aronstein,* 56 App.D.C. 126, 127, 10 F.2d 991, 992 (1926).[10] But this passage from *Coleman* does not support appellants' argument because, in this case, Mr. Clark was not acting alone. He was not seeking to convey, without the knowledge or consent of his spouse, any interest in the house to some third party. Instead, Mr. and Mrs. Clark acted together: Mr. Clark voluntarily relinquished his interest to Mrs. Clark, who, as the trial court noted, had full knowledge of the transaction

---

ferred to the other by inter vivos release, but not by testamentary devise.

**8.** The *Hogan* case held that, although a court could not vest title to real property in one spouse without granting an absolute divorce, either spouse could convey to the other his or her rights in property held by both as tenants by the entireties. "When both parties so situated agree to have their marriage rights in each other's property ... eliminated, this may be arranged between them." *Hogan v. Hogan, supra,* 102 U.S.App.D.C. at 88, 250 F.2d at 413.

**9.** "As long as the parties are united in marriage, neither spouse can effectively convey an interest in the estate nor compel a partition of the property *without the other's consent.*" *Travis, supra,* 360 A.2d at 509 (citations omitted; emphasis added).

**10.** "Under the doctrine of estates by the entireties, neither husband nor wife may convey any interest in the estate *to a stranger* without the consent of the other...." *Aronstein, supra,* 56 App.D.C. at 127, 10 F.2d at 992.

and consented to it by accepting the quitclaim deed.

Appellants also rely on a footnote in *In re Estate of Wall,* 142 U.S.App.D.C. 187, 440 F.2d 215 (1971), to buttress their assertion that "the rights of a cotenant may not be 'frustrated' by alienation." True as this statement is, it does nothing for appellants' position, as the full text of the *Wall* footnote reveals: "Survivorship incidental to joint tenancy differs [from that incidental to a tenancy by the entireties] because it may be frustrated, wholly or partly, by alienation or subjection to debts of a cotenant's undivided share or by compulsory partition." *Id.* at 190 n. 14, 440 F.2d at 218 n. 14. Thus *Wall* merely distinguishes between the two types of tenancy. It does not support appellants' assertion that a tenancy by the entireties protects the "rights" of a husband from being "frustrated" when that husband voluntarily relinquishes his interest in the marital property to his wife. Appellants are asking this court to use the concept of a tenancy by the entireties as a means of relieving Mr. Clark from the consequences of his decision to convey his interest in the house to Mrs. Clark. We decline to do so.

The decision in *American Wholesale Corp. v. Aronstein, supra,* is instructive because it too was a case rooted in a misunderstanding of the concept of tenancy by the entireties. In *Aronstein* creditors sought to set aside conveyances made by Aron Aronstein to his wife. The couple had bought two buildings as tenants by the entireties. Three years later Mr. Aronstein, having become indebted to American Wholesale Corporation, executed and delivered to his wife a deed conveying his interest in the two properties to her.[11] American Wholesale asserted that the conveyances were fraudulent and sought to have them set aside. The court rejected American Wholesale's claim for reasons that bear on this case:

> As to the conveyance ... made by Aronstein to his wife, the estate was held by them as tenants by the entireties, and the appellants were not entitled to subject the

separate interest of Aronstein to the payment of their claims. His conveyance to his wife accordingly could not hinder or delay them in the collection of their judgments.

*Id.* 56 App.D.C. at 127, 10 F.2d at 292. Thus the court in *Aronstein* found no reason why the conveyance from a husband to his wife of his interest in a property that they both held as tenants by the entireties should not be valid.

■ Appellants argue that the trial court's denial of their motion for judgment n.o.v. offends the common law and the policies underlying the doctrine of tenancy by the entireties. There is no substance to this argument. The court in *In re Estate of Wall, supra,* described the "vital incidents" of a tenancy by the entireties as "[a] unilaterally indestructible right of survivorship, an inability of one spouse to alienate his interest, and ... a broad immunity from claims of separate creditors...." 142 U.S.App.D.C. at 190, 440 F.2d at 218 (footnotes omitted). Thus when husband and wife are tenants by the entireties, it is not possible to partition the property *between them. See Settle, supra,* 56 App.D.C. at 51, 8 F.2d at 912. The trial court's ruling here, however, does not offend that principle because there was no partition or division of the property *between husband and wife;* instead, Mr. Clark relinquished his entire interest in the property to his wife. Another strong policy underpinning a tenancy by the entireties—illustrated by the *Aronstein* case—is the protection of a marital asset from the creditors of an individual spouse, who might otherwise deprive the other spouse of the marital asset without that spouse's knowledge or consent. *See Travis, supra,* 360 A.2d at 508. But allowing one spouse to relinquish his or her interest to the other does not offend this policy because it is a policy which focuses only upon third parties, and in this case there are none. *See Aronstein, supra,* 56 App.D.C. at 127, 10 F.2d at 992 ("neither husband nor wife may convey any interest in the estate *to a stranger* without the consent of the other" (empha-

---

11. Although the opinion does not reveal why Mr. Aronstein did this, it appears that he was trying to shelter these properties from his creditors, not

realizing that they were already beyond the creditors' reach because of the tenancy by the entireties.

sis added)). We are satisfied that the trial court's ruling was not inconsistent with or offensive to the doctrine of tenancy by the entireties.

Appellants suggest that the only way Mr. Clark could have transferred title to Mrs. Clark would have been for them both to convey the house to a third party, who would then convey it back to Mrs. Clark. We cannot agree. Such a procedure was not required in *Aronstein* to effect a transfer of the husband's interest to his wife when they held the property as tenants by the entireties. It is not required here either. The quitclaim deed was a valid conveyance of Raymond Clark's entire interest in the property to Danielle Clark; consequently, he had no interest remaining in the property to convey to Anne Lewis Clark, and the 1988 deed from Raymond to Anne is a nullity.

The judgment of the trial court is in all respects

*Affirmed.*